# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSÉ SAEZ, )
)  C.A. No. N19C-02-042 RRC
Plaintiff/Counterclaim Defendant, )
)
v. )
)
NEPHROLOGY ASSOCIATES, P.A., )
)
)
Defendant/Counterclaim Plaintiff. )
)

Submitted: September 16, 2019
Decided: October 16, 2019

On Plaintiff/Counterclaim Defendant José Saez's Motion to Dismiss.
**DENIED.**

On Defendant/Counterclaim Plaintiff's Motion for Partial Judgment on the
Pleadings as to Counts I and II of the Counterclaim.
**GRANTED.**

## MEMORANDUM OPINION

Daniel C. Herr, Esquire, Law Office of Daniel C. Herr, Wilmington, Delaware,
Attorney for Plaintiff José Saez.

Alan D. Albert, Esquire, O'Hagan Meyer PLLC, Wilmington, Delaware, Attorney
for Defendant Nephrology Associates, P.A..

COOCH, R.J.

1

# I. INTRODUCTION

Before this Court is the Motion to Dismiss of Plaintiff/Counterclaim Defendant José Saez ("Dr. Saez") as well as the Motion for Partial Judgment on the Pleadings as to Count I and Count II of the Counterclaim of Defendant/Counterclaim Plaintiff Nephrology Associates, P.A. ("NAPA"). These motions arise from Dr. Saez's separation from NAPA's medical practice and Dr. Saez's subsequent filing in this Court for declaratory judgment against NAPA.

Dr. Saez contends that, by NAPA placing him on so-called "Garden Leave,"[1] "[NAPA] has materially breached the [Employment] Agreement and, as a result, [Dr. Saez] is therefore excused from owing the non-competition liquidated damages contemplated in the Agreement."[2]

NAPA asserts that, pursuant to the Employment Agreement signed by Dr. Saez, "the board of NAPA has 'complete discretion to direct, control, and supervise the duties to be performed by [NAPA] for the Corporation' and that [NAPA's] exercise of that discretion to relieve [Dr. Saez] of patient care responsibilities during the terminal months of his contractual employment is entirely within [NAPA's] rights under the Employment Agreement[,]" after Dr. Saez informed NAPA in August 2018 that in six months he would be leaving NAPA.[3]

The issue before this Court is whether the placement of Dr. Saez on so-called "Garden Leave"[4] constitutes a material breach of the Employment Agreement, thus relieving Dr. Saez of non-competition liquidation damages.

This Court now finds for NAPA and agrees with NAPA that "the plain words of the agreement make clear that [Dr. Saez] agreed that the practice group had sole and complete discretion to [...] direct, control and supervise the services [Dr. Saez] was to perform."[5] In this Court's view, this includes the elimination of patient care

---

[1] An informal phrase, originating from the United Kingdom, which describes the practice whereby an employee leaving employment is instructed to stay away from work during the notice period, but paid their normal wages and benefits. *See generally* https://www.gov.uk/handing-in-your-notice/gardening-leave.

[2] Pl. Compl. at ¶¶ 28, 29.

[3] Def.'s Answ. and Countercl. at ¶¶ 27, 28, *see also* Employment Agreement at § 3 (contract provision defining the Employee's duties during his employment period).

[4] *See* Def.'s Mot. for Partial J. on the Pleadings at 7 (footnote explaining term "Garden Leave").

[5] Def.'s Mot. for Partial J. on the Pleadings at 10.

responsibilities, although he was paid, during the terminal months of Dr. Saez's employment.

## II. THE "JOINT STIPULATION OF THE PARTIES"[6]

1.  The plaintiff, Dr. Saez, a newly-trained nephrologist, entered into a written employment agreement (the "Employment Agreement" or "Agmt.") dated July 1, 2003, with defendant NAPA, Delaware's largest specialty nephrology practice. Cmplt. ¶ 4 (pleading Agreement) & Ex. A (executed Agreement); NAPA Ans. ¶ 4 (admitting Agreement); NAPA Countercl. ¶ 6 (pleading Agreement); Saez Mot. to Dismiss ¶ 2 (pleading entry into Agreement) (the lattermost pleading is hereinafter cited as "Saez MTD").

2.  The Employment Agreement is a fully integrated agreement, constituting, by its own terms, "the entire agreement between the parties" and "supersed[ing] any prior employment or other agreement between the parties," Agmt. at 1 (recitals) and § 14. The Employment Agreement may be amended only by a "subsequent written amendment signed by both parties," id. § 14.

3.  Pursuant to the Employment Agreement, Dr. Saez agreed to be employed by NAPA "to practice medicine" and "to perform certain other duties as may be determined from time to time by [NAPA]," id. at 1 (recitals). Dr. Saez, by executing the Employment Agreement, accepted employment "on the terms and conditions set forth" in the Agreement, id. at 1 (recitals). Prior to the events of October, 2018, that are a subject of this action, Dr. Saez generally saw patients on a daily basis.

4.  Pursuant to the Employment Agreement, "the Board [of NAPA] shall have complete discretion to direct, control and supervise the duties performed by [Dr. Saez] for [NAPA]," subject only to the limitation that NAPA's Board "shall not require [Dr. Saez] to infringe upon the ethics of the profession of medicine or violate any law or regulation," id. § 3.

5.  The Agreement contains, in § 9(a), a noncompetition provision (the "Noncompetition Covenant") by and through which Dr. Saez agreed that he "will refrain from the practice of nephrology . . . in any manner whatsoever, including, but not limited to, as a sole practitioner, partner, employee of another corporation, consultant or medical director of any hemodialysis center without the express written permission of the Board" of NAPA, for a "period of one (1) year" following termination of his employment with NAPA, within a specified geographic area (the

---

[6] At the Court's request, the parties have jointly stipulated to the Facts and Procedural History that they agree governs the disposition of both motions. *See* D.I. # 13.

"Defined Noncompetition Area").[7] Agmt. § 9(a); NAPA Countercl. ¶¶ 27-28 (pleading Covenant); Saez Ans. to Countercl. ¶¶ 27-28 (Covenant "speaks for itself").

6. Pursuant to the terms of the Employment Agreement, after six years of service, Dr. Saez was offered the opportunity to become a shareholder of NAPA, and accepted that offer, becoming a full shareholder. Countercl. ¶¶ 12-13; Saez Ans. to Countercl. ¶¶ 12-13 (Agreement speaks for itself, "believes" allegations are admitted).

7. Dr. Saez voluntarily resigned his employment by NAPA by means of an E-mail communication sent to NAPA's leadership on or about August 25, 2018, designating March 1, 2019 as his "termination date." Cmplt. ¶ 6; NAPA Ans. ¶ 6; NAPA Countercl. ¶ 21; Saez MTD ¶ 5. Section 8(a) of the Employment Agreement, addressing voluntary termination of employment, provides that written notice of voluntary termination of employment is to be given "not less than one hundred eighty (180) days in advance of the termination date;" Dr. Saez's March 1, 2019 Termination Date, falling 187 days after delivery of his written notice, is consistent with this requirement. Agmt. § 8(a); Cmplt. ¶ 6; NAPA Ans. ¶ 6; Countercl. ¶ 21; Saez Ans. to Countercl. ¶ 21, second sent. (admitting same).

8. In early October 2018, NAPA advised Dr. Saez that he was being relieved of patient care responsibilities for the balance of his six-month notice period and would not be assigned any more patient encounters during that period, although he would continue to be paid his full compensation. NAPA advised Dr. Saez that he should henceforth avoid being present in patient care areas of the practice. Dr. Saez abided by NAPA's prohibition. As a result, during the final months of his six-month notice period (early-October 2018 through March 1, 2019), Dr. Saez did not see patients.

9. Dr. Saez was paid his salary through his termination date of March 1, 2019. Dr. Saez also remained a NAPA shareholder through March 1, 2019.

10. Since the termination of his employment with NAPA on March 1, 2019, Dr. Saez has been practicing, and is currently practicing, nephrology within southern Delaware, which is part of the Defined Noncompetition Area. Agmt. ¶ 9(a) (southern Delaware part of defined area); Saez MTD ¶ 8 ("Saez opened his own nephrology practice in southern Delaware").

11. The Noncompetition Covenant provides that, if the noncompetition obligation is not enforceable, Dr. Saez is obliged to pay liquidated damages for each end-stage renal disease ("ESRD") patient of NAPA that becomes a patient of

---

[7] In particular, the Defined Noncompetition Area is comprised of the three counties constituting the State of Delaware; Chester and Delaware Counties, Pennsylvania; Cecil County, Maryland; and the Eastern Shore of Maryland.

4

any competing practice he operates during the noncompetition period. Agmt. § 9(b)); Cmplt. ¶ 19 (acknowledging Agmt. § 9(b) and NAPA assertion of its rights pursuant to it); NAPA Ans. ¶ 19 (admitting it considers Dr. Saez bound by Agmt § 9(b); Saez MTD ¶ 2 (acknowledging liquidated damages provisions). The Agreement recites that the Liquidated Damages Provisions are not a penalty but rather are an estimate of damages that would arise from competition, and recites the basis upon which the liquidated damages have been computed. *Id.*

12.     A statute, 6 Del. Code § 2707,[8] renders the Noncompetition Covenant unenforceable as a matter of law, inasmuch as the Covenant would prevent Dr. Saez, a physician, from practicing within a specified geographic area for a defined period of time. Section 2707, however, expressly permits the enforcement of liquidated damages provisions in lieu of injunctive enforcement of a physician noncompetition covenant.

13.     Dr. Saez contends that he is not obligated to pay liquidated damages pursuant to Liquidated Damages Provisions, Cmplt. ¶¶ 20-29 (seeking declaration that he is not bound by Liquidated Damages Provisions); Saez MTD ¶ 2 (seeking dismissal of NAPA effort to obtain declaration that Dr. Saez is bound by Liquidated Damages Provisions and dismissal of breach of contract claim relating to same), and through his Complaint and Motion to Dismiss requests the Court to enter a declaratory judgment affirming his position.

14.     Dr. Saez's rationale for seeking declaratory relief invalidating the noncompetition provisions of the Agreement, and for denying any obligation to pay liquidated damages for competing with NAPA, is his allegation that NAPA first breached the Agreement in October, 2018, by relieving him of patient care responsibilities for the balance of his six-month notice period ending March 1, 2019, determining not to assign him any more patient encounters during that period, and instructing him, for the balance of the period, to avoid being present in patient care areas of the practice. Cmplt. ¶ 28; Saez MTD ¶ 20.

---

[8] This statute, enacted in 1983, provides as follows:

**§ 2707 Agreements not to compete.**

Any covenant not to compete provision of an employment, partnership or corporate agreement between and/or among physicians which restricts the right of a physician to practice medicine in a particular locale and/or for a defined period of time, upon the termination of the principal agreement of which the said provision is a part, shall be void; except that all other provisions of such an agreement shall be enforceable at law, including provisions which require the payment of damages in an amount that is reasonably related to the injury suffered by reason of termination of the principal agreement. Provisions which require the payment of damages upon termination of the principal agreement may include, but not be limited to, damages related to competition.

6 Del. Code § 2707.

5

## III. STANDARD OF REVIEW

### A. Dr. Saez's Motion to Dismiss Counts I and II of NAPA's Counterclaim

Upon a motion to dismiss under Superior Court Rule 12(b)(6), the Court "(i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[9] However, the Court will "ignore conclusory allegations that lack specific supporting factual allegations."[10]

### B. NAPA's Motion for Partial Judgment on the Pleadings

Pursuant to Superior Court Civil Rule 12(c), a party may move for judgment on the pleadings, "[a]fter the pleadings are closed but within such time as not to delay the trial."[11] "On such a motion, the Court must accept all the complaint's well-pled facts as true and construe all reasonable inferences in favor of the non-moving party."[12] However, "[t]he standard for granting a motion for final judgment on the pleadings is stringent,"[13] and the motion will be denied unless there are no material issues of fact and the movant is entitled to judgment as a matter of law.[14]

## V. DISCUSSION

### A. Procedural Posture

This Court is presently required to weigh Dr. Saez's Motion to Dismiss Counts I and II of NAPA's Counterclaim against NAPA's Motion for Partial Judgment on the

---

[9] *Turf Nation, Inc. v. UBU Sports, Inc.*, 2017 WL 4535970, at *5 (Del. Super. Ct. Oct. 11, 2017) (citing *Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011)).

[10] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

[11] Del. Super. Ct. Crim. R. 12(c).

[12] *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del.Super.Aug. 8, 2012).

[13] *See Artisans' Bank v. Seaford IR, LLC*, 2010 WL 2501471, at *1 (Del. Super. Ct. June 21, 2010).

[14] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993).

Pleadings only as to Counts I and II. Count I of NAPA's Counterclaim is a claim for Declaratory Judgment that the noncompetition and liquidated damages provisions of the employment agreement are binding on Dr. Saez (Declaratory Judgment). Count II of NAPA's Counterclaim is a claim for anticipatory breach of contract and liquidated damages for competition in violation of the noncompetition covenant (Anticipatory Breach of Contract).[15] NAPA has voluntarily withdrawn Count V (Breach of Fiduciary Duty) of the Counterclaim as it is not a claim of the subject matter that this Court can properly adjudicate. The remaining claims contained within NAPA's Counterclaim are unaffected: Misappropriation of Trade Secrets (III), Unlawful Access to Computer Data (IV), Unfair Competition (VI), Unjust Enrichment (VII), and Civil Conspiracy (VIII). This Court has set a non-jury trial date of November 11, 2020 on these remaining Counterclaims.

Both parties have asserted that the Employment Agreement is unambiguous, but differ on the interpretation of the key provisions.[16] The parties are in agreement that there are no issues of material fact. These cross-motions, where both of the parties have stipulated to the operative facts of the claim and the issue is the interpretation of the Employment Agreement, is akin to the standard applicable to cross-motions addressed in Superior Court Rule 56(h).[17] The parties have referred to the competing cross-motions as "mirror images" of each other.[18]

This Court deems the motions to be the equivalent of a stipulation for decision on the merits of Counts I (Declaratory Judgment) and II (Anticipatory Breach of Contract) of the Counterclaim based on the record submitted with the motions and the stipulation of procedural history and factual background submitted by the parties.

Count I of NAPA's Counterclaim is a claim for declaratory judgment that the noncompetition and liquidated damages provisions of the employment agreement are binding on Dr. Saez. Count II of NAPA's Counterclaim is a claim for

---

[15] Def.'s Answ. and Countercl. at ¶¶ 54-64.

[16] *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. Supr. 1992) (A "[c]ontract is not rendered ambiguous merely if parties do not agree upon its construction, but contract is ambiguous if provisions in controversy are reasonably or fairly susceptible to different interpretations or may have two or more different meanings.").

[17] Del. Supr. Ct. Rule 56(h) (Cross motions. – Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.).

[18] Def.'s Answ. and Countercl. at 12.

anticipatory breach of contract and liquidated damages for competition in violation of the noncompetition covenant.

## B. Dr. Saez's Motion to Dismiss – DENIED

Dr. Saez's Motion to Dismiss is denied because this Court finds § 3 of the Employment Agreement, specifically the clause that permits the Board the "complete discretion to direct, control, and supervise the duties to be performed by the Employee for the Corporation[,]"[19] binding in this matter.

> 3. DUTIES:
> It is understood and agreed that the Employee's performance of duties as a medical professional will involve time that is substantially in excess of forty (40) hours per week. It is also understood and agreed that the Employee is employed to practice medicine actively on behalf of the Corporation and that said Employee will not engage in the practice of medicine in any other capacity without the prior written approval of the Board. The Corporation will have the power to determine, within reason, the means and manner in which the Employee may practice medicine outside the Corporation,
> **The Board shall have complete discretion to direct, control, and supervise the duties to be performed by the Employee for the Corporation**; provided, however, that the Board shall not require the Employee to infringe upon the ethics of the profession of medicine or violate any law or regulation.[20]

Although Dr. Saez contends that the phrases "will involve time that is substantially in excess of forty (40) hours per week" and "practice medicine actively" indicate that the placement of Dr. Saez on "Garden Leave" was improper and thus a material breach of the contract,[21] this Court finds that the following paragraph indicating "complete discretion to direct, control, and supervise the duties to be performed by the Employee for the Corporation" controls and permits NAPA to relieve Dr. Saez of his patient-care responsibilities for the terminal months of his employment with NAPA.[22]

---

[19] Employment Agreement at § 3.
[20] *Id.* (emphasis added).
[21] Pl.'s Resp. to Def.'s Mot. for Partial J. on the Pleadings at ¶ 5; Employment Agreement at §§ 9(a), 9(b); *see also* Pl.'s Compl. at ¶ 28; *see also* Pl.'s Mot. to Dismiss at ¶¶ 2 and 19;
[22] Employment Agreement at § 3.

This Court does not find support in the Agreement for Dr. Saez's contention that the Agreement provides some minimum caseload, particularly in the scenario at hand where the plaintiff had given notice of his departure date. The phrase "practice medicine actively" means, in this context, that no private outside work is allowed.[23]

To conclude, although the U.K. theory of "Garden Leave" was raised in this case and is cited in two Chancery court cases, its potential applicability is not necessary to making a determination on the merits of this issue. This issue has been decided on other grounds.[24]

### C. NAPA's Motion for Partial Judgment on the Pleadings as to Count I and II – GRANTED

NAPA's Motion for Partial Judgment on the Pleadings as to Count I and II is granted. "Pursuant to the Employment Agreement, [Dr. Saez] agreed to be employed by NAPA 'to practice medicine' and 'to perform certain other duties as may be determined from time to time by [NAPA].' [Dr. Saez], by executing the Employment Agreement, accepted employment 'on the terms and conditions set forth' in the Agreement."[25]

In § 9(a) of the Employment Agreement, Dr. Saez agreed to a noncompetition provision and stipulated that he "will refrain from the practice of nephrology … in any manner whatsoever, including, but not limited to, as a sole practitioner, partner, employee of another corporation, consultant or medical director of any hemodialysis center without the express written permission of the Board[,]" for a "period of one (1) year" following the termination of his employment with NAPA within the specified geographic area.[26]

9. EMPLOYMENT IN COMPETITION:

---

[23] *See* Employment Agreement at § 3 (It is also understood and agreed that the Employee is employed to practice medicine actively **on behalf of the Corporation** and that said Employee will not engage in the practice of medicine in any other capacity without the prior written approval of the Board.") (emphasis added).

[24] This Court thus makes no finding, one way or the other, that the U.K. concept of "Garden Leave" has legal viability in Delaware.

[25] Def.'s Mot. for Partial J. on the Pleadings at 3, *see also* Employment Agreement at § 9(a)

[26] Employment Agreement at § 9(a); Def.'s Countercl. at ¶¶ 27-28; Pl. Answ. to Countercl. at ¶¶ 27-28; Pl.'s Mot. to Dismiss at ¶ 2 (acknowledging Dr. Saez's potential liability to pay liquidated damages pursuant to Covenant unless excused by Court).

(a) The Employee hereby agrees that should he voluntarily terminate his employment with the Corporation, he will refrain from the practice of nephrology within the State of Delaware; Chester and Delaware Counties, Pennsylvania; and Cecil County and the Eastern Shore of Maryland for a period of one (1) year in any manner whatsoever, including, but not limited to, as a sole practitioner, partner, employee of another corporation, consultant, or medical director of any hemodialysis center without the express written permission of the Board.

(b) The Employee acknowledges that providing medical services as a specialist in nephrology in the State of Delaware; Chester and Delaware Counties, Pennsylvania; and Cecil County and the Eastern Shore of Maryland (hereinafter "Competition") after the Employee's termination of employment under this Agreement would constitute a substantial detriment to Employer. In the event Employee engages in Competition after his termination of employment under this Agreement, and the agreement not to compete set forth in Paragraph 9 ( a) above is determined to be unenforceable for any reason, he agrees to pay to Employer liquidated damages in an amount equal to $9,000 per ESRD patient lost (the "Agreed Damage Amount") by the Employer through Competition during the first year ofte1mination to be payable in twelve (12) equal monthly installments following the loss of each patient. Employer and Employee acknowledge that the Agreed Damage Amount is not a penalty, but rather a reasonable estimate of the actual damages that Employer would suffer in the event of any Competition. Employer has arrived at such reasonable estimate by reviewing Employer's financial statements and calculating the average amount of income per ESRD patient per year ($4,500) times two years, which is the estimated amount of time for the Employer to replace a lost patient. The Employee concurs with this estimate and the method of determination.[27]

Although § 9 is conceded by both parties to be unenforceable,[28] the parties have stipulated to a later determination of liquidated damages in the event that Dr. Saez competes with the firm during the one year period.[29] The Agreement requires Dr. Saez to pay liquidated damages in the amount of $9,000.00 per End Stage Renal Disease (ESRD) patient who was previously treated by NAPA and later lost to Dr. Saez.[30]

---

[27] Employment Agreement at § 9.

[28] 6 *Del. C.* § 2707.

[29] Employment Agreement at § 9(a).

[30] Def.'s Mot. For J. on the Pleadings at 3, *see also* Employment Agreement at § 9(b).

This Court finds that Dr. Saez improperly repudiated any obligation to pay liquidated damages pursuant to the Covenant in the Employment Agreement by seeking a declaration that he is not bound by the liquidated damages provisions in §9(b) and seeking dismissal of NAPA's request for declaration that Dr. Saez is bound by §9(b) and dismissal of breach of contract claim.[31] As such, this Court finds the liquidated damages provision under §9(b) to be enforceable upon Dr. Saez.

## VI. CONCLUSION

Dr. Saez's Motion to Dismiss is **DENIED.**

NAPA's Motion for Judgment on the Pleadings as to Counts I and II is **GRANTED.**

Richard R. Cooch, R.J.

cc: Prothonotary

---

[31] Pl.'s Compl. at ¶¶ 20-29 (seeking declaration that he is not bound by Liquidated Damages Provisions); Def.'s Mot. to Dismiss at ¶ 2 (seeking dismissal of NAPA effort to obtain declaration that Dr. Saez is bound by Liquidated Damages Provisions and dismissal of breach of contract claim relating to same).

11